UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN JOE LARA,

    Petitioner,

    v.

JAMES YATES, warden,

    Respondent.

No. C 06-3138 MHP (pr)

**ORDER DENYING HABEAS PETITION**

## INTRODUCTION

John Lara filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the court for consideration of the merits of the petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Lara was convicted in Santa Clara County Superior Court of numerous sex offenses against minors. The state appellate court provided this summary of the evidence:

> Because of the nature of defendant's claims, we briefly summarize the facts here in chronological order, from the oldest charged crimes to the most recent. We then summarize the uncharged crimes. Defendant was arrested in 2002, after Daniel and Larry reported the crimes to their parents and the police were contacted. A search warrant was executed at defendant's apartment. The search yielded, among other things, three videotapes of defendant performing sex acts on Larry, Daniel and Adam. In response to a press release about defendant's arrest issued by the police department, Isaac, Raymond and Gabriel contacted the police.

Counts 18 through 21
Isaac was 26 years old at the time of trial. He first met defendant when he was three or four years old, and defendant was between 16 and 18 years old. Defendant lived near Isaac's grandmother's house and was a friend of the family. When Isaac was between the ages of three and seven years old, defendant would sometimes take him and his older brother, Gabriel, to the movies, and their father would let the boys spend the night at defendant's house. The first molestations occurred during these overnight visits.

Isaac moved away and he did not see defendant for several years. Isaac and his mother moved back to San Jose when Isaac was 11 years old. At that point, the overnight visits and the molestations resumed. The last incident occurred when he was 16 years old. He reported the crimes to the police on May 3, 2002, when he saw in a press release that defendant had been arrested.

Count 25
Raymond was 19 at the time of trial. He met [defendant] on New Year's Eve in 1995, when he was 12 years old. He and his younger cousin Carlos spent the night at defendant's house. Defendant gave them alcohol; Raymond passed out. He awoke sometime that night to find that defendant was sodomizing him.

Counts 4 through 14, and 22 through 24
Adam was 16 years old at the time of trial. He met defendant when he was 11 or 12. He met defendant at the swimming pool at the apartments where the defendant lived. After about two weeks, Adam started spending nights at defendant's apartment. Soon he was going there every morning before school and they would engage in sex acts. They also had sex when he spent the night. This went on for about 18 months. Sometimes, defendant would videotape the two of them having sex. The videotapes were played for the jury at trial.

Count 1
Daniel was 15 at the time of trial. He met defendant at the apartments where defendant worked. He stayed at defendant's place three times, and on one of those occasions he got drunk; when he woke up, he was in bed with defendant and another boy, Larry. Neither of the boys had any clothes on. The sex acts that occurred that night were captured on videotape by the defendant and played for the jury.

Counts 2 and 3
Larry was 14 at the time of trial. He met defendant in 2002 when he was 13, while swimming at the apartments where defendant worked. Larry spent two nights at defendant's apartment. The first night, he was there with Daniel, Marcos and Carlos. Defendant gave them alcohol. Larry got sick and woke up the next morning in bed with Daniel and defendant. Neither he nor Daniel had any clothes on. The sex acts giving rise to these counts were captured on videotape and played for the jury.

Uncharged Crimes
Gabriel, Isaac's older brother, was 27 at the time of trial. He was 8 or 9 years old, and defendant was 17 or 18 years old, when they met. He testified that he, too, was also repeatedly fondled by defendant during overnight visits. Gabriel was 13 or 14 years old when he stopped having contact with defendant.

Gilbert was 28 years old at the time of trial. He was 6 or 7 when he first met defendant, who worked at the daycare center where Gilbert and his two brothers, Albert and Robert, went. At some point, defendant became good friends with the boys' mother, and she let him baby-sit them. Defendant would fondle him when he spent the

2

> night at defendant's house. He told his mother, and his mother went to the police.
>
> Robert was 25 years old at the time of trial. He testified that defendant groped him when he was asleep. Albert, who was 27 years old at the time of trial, also testified that defendant groped and fondled him. He also told his mother and talked to police.

Resp. Ex. K, California Court of Appeal Opinion ("Cal. Ct. App. Opinion"), at 5-7.  On May 15, 2003, Lara was sentenced to 195 years to life in prison plus 14 years and 8 months.

Lara appealed.  The California Court of Appeal reversed the conviction on count 21 and affirmed the judgment in all other respects in an opinion filed December 17, 2004.  The California Supreme Court denied Lara's petition for review on March 2, 2005.

Lara then filed this action, seeking a writ of habeas corpus.  The petition alleged three claims for relief: (1) the application of California Evidence Code § 1108 to his case violated the Ex Post Facto Clause of the U.S. Constitution because several of his offenses predated its enactment; (2) the use of California Penal Code § 803(g) to revive the time-barred charges in counts 18, 19 and 20 violated the Ex Post Facto Clause; and (3) the court's imposition of the upper term and consecutive sentences violated Lara's Sixth and Fourteenth Amendment rights to a jury trial and proof beyond a reasonable doubt (the "Apprendi claim").

The court issued an order to show cause, and respondent filed an answer on March 20, 2007.  In his answer, respondent argued that all three claims failed on the merits and that the Apprendi claim was unexhausted.  Before the court ruled on the merits or the non-exhaustion argument, Lara moved for a stay of these proceedings so he could exhaust state court remedies as to the Apprendi claim and other unidentified claims.  The court granted the motion and stayed this action.  Lara then pursued his claims on collateral review in state court.  Eventually, he returned to federal court with an amended petition that had eleven claims – the three from the original petition plus eight new claims.  The new claims were dismissed as time-barred.  The three remaining claims are now ready for a decision on the merits.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged

3

conviction occurred in Santa Clara County, California, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  Respondent does not contend that state court remedies were not exhausted for the claims in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

4

1  federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."
2  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask
3  whether the state court's application of clearly established federal law was "objectively
4  unreasonable."  Id. at 409.

## DISCUSSION

A.     Ex Post Facto Challenge To California Evidence Code §1108

    1.     Propensity Evidence And The California Evidence Code

California Evidence Code § 1101 provides, in relevant part: "(a) Except as provided in this section and Section[] . . . 1108, . . . evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."

California Evidence Code § 1108(a) became effective on January 1, 1996.  Section 1108(a) states that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."

California Evidence Code § 352 permits the court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

    2.     Lara's State Court Proceedings

Lara was convicted of crimes against Isaac that predated the enactment of California Evidence Code § 1108.  He argues that, by permitting the introduction of evidence of his prior sex offenses with Gabriel, Gilbert, Robert and Albert to prove his propensity to commit the charged sex offenses with Isaac, the state court violated his rights under the Ex Post Facto Clause.

5

The California Court of Appeal rejected Lara's argument that admission of evidence under California Evidence Code § 1108 violated his right to be free from ex post facto laws. The court first explained that, regardless of § 1108, the evidence of prior sex offenses would have been admissible under Evidence Code § 1101(b) and § 352 – albeit for a different purpose.  The challenged evidence would have been admissible  because "it was probative of intent, common scheme or plan and modus operandi" in light of the fact that the "similarities between the charged crimes and uncharged crimes demonstrated a long-standing pattern of befriending and then molesting young boys." Cal. Ct. App. Opinion, at 9.

The state appellate court then explained that § 1108 did not violate the Ex Post Facto Clause.  After reviewing two state court decisions that had rejected challenges to the statute, the court considered <u>Carmell v. Texas</u>, 529 U.S. 513 (2000), and determined that <u>Carmell</u> did not undermine the earlier state court decisions.

> In terms of <u>Carmell</u>, Evidence Code section 1108 deems more evidence relevant and makes more evidence admissible, but it does not thereby eliminate or lower the quantum of proof required, or in any way reduce the prosecutor's burden of proof. The prosecutor must still prove the same elements beyond a reasonable doubt to convict a defendant. (<u>McCulloch v. State</u> (2001) 39 S.W.3d 678, 683-684 [Texas statute allowing evidence of other child molests not ex post facto].)
>
> While it does appear that, unlike ordinary rules of evidence, Evidence Code section 1108 does not benefit the State and the defendant equally, evenhandedness in application was not the sole, or for that matter the most important, consideration identified by the <u>Carmell</u> court. The <u>Carmell</u> court was most concerned with that aspect of an evidentiary rule affecting the <u>sufficiency</u> of the evidence, rather than its <u>admissibility</u>. We conclude that section 1108 does not violate the constitutional prohibition against ex post facto laws.

Cal. Ct. App. Opinion, at 11.

The U.S. Constitution provides that "No State shall . . .  pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts. . . ."  U.S. Const., Art. I, § 10. In <u>Calder v. Bull</u>, 3 U.S. (3 Dall.) 386, 390 (1798), Justice Chase gave the classic description of ex post facto laws:

> I will state what laws I consider <u>ex post facto</u> laws, within the words and intent of the prohibition.  1st.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2d.  Every law that aggravates a crime, or makes it greater than it was, when committed.  3d Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  <u>4th.  Every law that alters the legal rules</u>

6

> of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

3 U.S. at 390 (emphasis added); see Carmell v. Texas, 529 U.S. 513, 537-39 (2000) (fourth Calder category remains valid).

The fourth Calder category prohibits both laws that lower the burden of proof and laws that reduce the quantum of evidence necessary to meet that burden. Cf. Carmell, 529 U.S. at 541. However, it does not mean that a state may not make any change to evidence laws. For example, a change in a witness competency rule did not violate the Ex Post Facto Clause; the changed rule did not always run in favor of the state and did not necessarily affect, let alone subvert, the presumption of innocence. See Carmell, 529 U.S. at 533 n.23, 546. "The issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant. Evidence admissibility rules do not go to the general issue of guilt, nor to whether a conviction, as a matter of law, may be sustained." Id. at 546; see also Hopt v. Territory of Utah, 110 U.S. 574, 589-90 (1883) ("Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage, for they do not . . . alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed").

In analyzing Lara's claim, the California Court of Appeal set forth the appropriate federal standard and applied the leading Supreme Court case of Carmell to Lara's case. The state court determined that § 1108, while adding to the pool of evidence which the jury could consider, did not lessen the prosecution's burden to prove Lara's guilt beyond a reasonable doubt. The state appellate court's application of Carmell was reasonable. The defendant in Carmell, like Lara, had been accused of molestation, and asserted that a recently amended law violated the ex post facto prohibition. Carmell, 529 U.S. at 516. Texas had amended the disputed law, which had previously prohibited sexual assault convictions upon the victim's uncorroborated testimony, unless the victim had informed someone of the assault within six

1  months, to authorize conviction on the victim's testimony alone. <u>Id.</u> at 516-517.  By
2  decreasing "the minimum quantum of evidence required to obtain a conviction," the law
3  violated the ex post facto prohibition. <u>Id.</u> at 534.  <u>Carmell</u> noted that ordinary rules of
4  evidence, unlike the Texas law at issue, do not violate the Ex Post Facto Clause, because the
5  question of evidence admissibility differs entirely from whether admitted evidence suffices to
6  permit a conviction.  <u>Carmell</u>, 529 U.S. at 1638-1640.  The California Court of Appeal
7  construed § 1108 as an evidence admissibility as opposed to a rule that determined whether
8  admitted evidence suffices to permit a conviction.

9        Section 1108 was enacted after the crimes against Isaac occurred, but it did not lower
10 the burden of proof for the prosecution or change the quantum of evidence necessary to
11 convict.  The statute permitted the jury to consider additional relevant evidence that was not
12 excluded under § 352 in determining whether the prosecution had met its burden of proof.
13 Lara has not shown that § 1108, on its face or as applied in his case, altered the burden of
14 proof of the amount of evidence necessary to convict.  Section 1108 changed evidence
15 admissibility rules, but that was permissible under <u>Carmell</u> and did not run afoul of the Ex
16 Post Facto Clause.   Further, even though it is, as Lara argues, literally true that § 1108 may
17 allow conviction on "different . . . testimony" than that allowed before the adoption of the
18 rule, narrowly focusing on that phrase from <u>Carmell</u> improperly ignores <u>Carmell</u>'s "extended
19 discussion of the difference between sufficiency rules on one hand, and admissibility and
20 competency rules on the other."  <u>See</u> <u>Schroeder v. Tilton</u>, 493 F. 3d 1083, 1088 (9th Cir.
21 2007) (rejecting ex post facto challenge to § 1108).

22       The California Court of Appeal's rejection of the Ex Post Facto Clause claim was not
23 "contrary to" nor "an unreasonable application of" federal law.  28 U.S.C. § 2254(d)(1).

24 B.    <u>Ex Post Facto Challenge To Cal. Penal Code § 803(g)</u>

25       Lara's prosecution for three of his offenses was made possible because of a provision
26 in the California Penal Code that extended and revived the statute of limitations period for
27 prosecution of certain sex offenses against minors.   He contends that this violates his rights
28 under the Ex Post Facto Clause of the U.S. Constitution.  As will be explained in more

8

detail, the critical distinction for ex post facto purposes is whether the law revives an expired limitations period or extends an unexpired limitations period – only the former is an impermissible ex post facto law.  In Lara's case, the unexpired limitations period was extended and that was not an impermissible ex post facto law.

### 1. Background

The statute of limitations for the commencement of a prosecution for committing a lewd and lascivious act on a child under age 14 is 6 years.  See Cal. Penal Code §§ 288(a), 800.  California Penal Code § 803 extends and revives this limitations period under certain circumstances.  Section 803(g) is the key passage for the present dispute:

> (g)    (1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.
>
> (2) This subdivision applies only if both of the following occur:  (A) The limitation period specified in Section 800 or 801 <u>has expired</u>.  (B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals.
>
> (3)(A) This subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall <u>revive</u> any cause of action barred by Section 800 or 801 if any of the following occurred or occurs: (I) The complaint or indictment was filed on or before January 1, 1997, and it was filed within the time period specified in this subdivision. (ii) The complaint or indictment is or was filed subsequent to January 1, 1997, and it is or was filed within the time period specified within this subdivision. (iii) The victim made the report required by this subdivision to a law enforcement agency after January 1, 1994.

Cal. Ct. App. Opinion, at 12, n.5, quoting version of Cal. Penal Code § 803(g) in place in 2004 (emphasis added).  Section 803(g) became effective on January 1, 1994, although § 803(g)(3) was not added until 1996.

In Lara's case, the lewd and lascivious conduct charged in counts 18-20 occurred between September 11, 1987 and September 10, 1998 (count 18); between September 11, 1988 and September 10, 1989 (count 19) and between September 11, 1989 and

September 10, 1990 (count 20).  The statute of limitations would have expired for these offenses between September 1994 and September 1996.  After the offenses were committed, but before the statute of limitations had expired for any of the three offenses, § 803(g) became effective January 1, 1994.

Lara contended in state court that using §803(g) to extend the limitations period for his prosecution amounted to an ex post facto violation.  The California Court of Appeal rejected Lara's ex post facto challenge.  The court considered the Supreme Court case of Stogner v. California, 539 U.S. 607 (2003), and concluded that it had not held §803(g) unconstitutional in all respects, but only insofar as that subsection revived an expired statute of limitations.  This was not the situation for Lara because the limitations period had not expired.  "In [Lara's] case, unlike Stogner, section 803(g) operates only as an extension of the statute of limitations for the crimes charged in counts 18 through 21, and is therefore constitutional as applied to him." Cal. Ct. App. Opinion, at 18.  (Although Lara challenged count 21 as well as counts 18-20 on appeal, the conviction on count 21 was overturned on other grounds, so it is no longer necessary to consider whether it is time-barred.)

The state appellate court considered and rejected Lara's two specific arguments.  First, Lara had argued that the version of § 803(g) enacted in 1993 did not have a retroactivity provision that made it applicable to any causes of action that arose before its enactment.  Second, Lara made a textual argument that § 803 should be treated as reviving an expired limitations period because it used the term "revive" and only applied when the statute of limitations had expired.  The state appellate court explained that it was bound by the California Supreme Court's construction of the statute.  Lara's first argument was rejected because the California Supreme Court had construed the 1996 amendment to be a clarification rather than a change to the 1993 version. Cal. Ct. App. Opinion, at 15-16.  The California Supreme Court had determined that § 803(g) "was intended to extend the limitations period in cases where the statute of limitations under section 800 or 801 had not run, and to revive cases where the statute of limitations had run. '[N]othing in section 803(g) provides that the crime must be committed, or that the limitations period in section 800 or

10

801 must expire, after January 1, 1994, in order for the extended one-year period to apply.'" Cal. Ct. App. Opinion, at 15 quoting People v. Frazer, 21 Cal.4th 737, 752 (Cal. 1999), overruled on other grounds in Stogner v. California, 539 U.S. 607 (2003). Lara's second argument was rejected because, notwithstanding the wording of the statute, the statute had been construed by California courts to be an extension statute rather than a revival statute when applied to crimes which were not time-barred on January 1, 1994. Cal. Ct. App. Opinion, at 16. In those cases where it merely extended the limitations period rather than revived it, § 803(g) did not run afoul of the ruling in Stogner.

2.  Analysis

Laws reviving the limitations period for prosecution of a crime, which are enacted after the previously-applicable limitations period has expired, violate the Ex Post Facto Clause. See Stogner, 539 U.S. at 607-09. If such laws are enacted before the pre-existing limitations period has expired, however, the enactment does not violate the Ex Post Facto Clause. See Renderos v. Ryan, 469 F.3d 788, 795 (9th Cir. 2006) (§ 803(g) did not violate Ex Post Facto Clause as applied to an unexpired statute of limitations: this is "precisely the type of statute that Stogner expressly stated it was not striking down"); United States v. Bischel, 61 F.3d 1429, 1435-36 (9th Cir. 1995) (change in law extending statute of limitations after defendant committed offense but before original limitations period had run did not violate Ex Post Facto Clause). The fact that the extension of the limitations period is conditional on certain events, such as corroboration and reporting of the crime to authorities, does not matter; instead, the focus is whether the limitations period has expired before the statute was enacted that extended the limitations period. See Renderos, 469 F.3d at 795.

Lara is not entitled to federal habeas relief on this claim. The crimes in counts 18-20 occurred between September 11, 1987 and September 10, 1990. The statute of limitations would have expired for these offenses between September 1994 and September 1996. After the offenses were committed, but before the statute of limitations had expired for any of these four offenses, § 803(g) became effective January 1, 1994. Pursuant to this section, Lara was charged in December 2002, within a year of the May 3, 2002 reporting of the offenses by the

victims to the police. The state appellate court correctly concluded that Stogner does not apply because the limitations period had not expired before it was extended.

Lara argues that the state appellate court incorrectly determined that the amendments effective January 1, 1994 applied to him and contends that it was not until the 1996 amendment that § 803(g) was made retroactive. However, the state courts, including the state court of appeal in Lara's case, have determined that the 1996 amendment to § 803(g) was to clarify rather than change existing law. See Cal. Ct. App. Opinion, at 14-15, citing Frazer, 21 Cal. 4th at 746, 752; People v. Robertson, 113 Cal. App. 4th 389 (Cal. Ct. App. 2003). That is, the state court determined that, since its 1994 effective date, § 803(g) had reached crimes occurring before and after its 1994 effective date. The state courts' interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal habeas court. See Bradshaw v. Richey, 546 U.S. 74, 77 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988). Thus, January 1, 1994 is the critical date, for that is the date when (according to state courts) § 803(g) extended and revived the limitations periods for certain sex offenses against minors. This court does not revisit that determination, but instead applies it in considering whether the limitations periods had already expired for counts 18-20 when the limitations period was extended on January 1, 1994.

Stogner held that a law had a constitutionally prohibited retroactive effect only where the statute is used "after expiration of a previously applicable limitations period . . . to revive a previously time-barred prosecution." See Stogner 539 U.S. at 632-33. This is not the situation in Lara's case. The effect of § 803(g) when it became effective in 1994 was to extend the statute of limitations on the charged offenses – a statute of limitations period that had not yet expired. Lara may have been nearing the day when he would be free from criminal liability for the lewd conduct offenses, but he never actually reached that day because the California Legislature changed the limitations period before that day arrived. That fact is determinative on the legal question.

12

The extension of the unexpired statute of limitations period did not violate the Ex Post Facto Clause. See Renderos, 469 F.3d at 795; see also Stogner, 539 U.S. at 632 (to hold that a law reviving a long-forbidden prosecution "is ex post facto does not prevent the State from extending time limits for the prosecution of future offenses, or for prosecutions not yet time barred"). The state court's rejection of this claim was not an objectively unreasonable application of nor contrary to Supreme Court precedent. See 28 U.S.C. § 2254(d).

C. Challenges To Sentence

   1. State Court Proceedings

The components of the very lengthy sentence that the superior court imposed were explained by the California Court of Appeal:

> On May 15, 2003, the court sentenced defendant to an aggregate term of 195 years to life, consecutive to a 16 year, 8 month determinate term, as follows: on count 1 (§ 286, subd. (f) on Daniel), the court imposed the upper term of 8 years. The court sentenced defendant to consecutive two year terms (one-third the midterm) on counts 17, 18, 19, and 20 against Isaac. The court also sentenced defendant to a consecutive term of 8 months (one third the midterm) for count 21 against Isaac, and to concurrent upper terms of three years each for count 14 against Adam and counts 22, 23, and 24, also involving Adam.
>
> Pursuant to the provisions of section 667.61, the court imposed indeterminate consecutive terms of 15 years to life for counts 2 through 10 and 25, lewd and lascivious acts against Larry, Adam and Raymond, and for the forcible oral copulation and sodomy of Adam found in counts 11, 12 and 13.

Cal. Ct. App. Opinion, at 4.

Lara challenged two determinations made in the course of the sentencing. First, he contends that the selection of the upper-term sentences for several offenses violated his Apprendi rights. Second, he contends that the imposition of consecutive instead of concurrent sentences for several offenses violated his Apprendi rights.

The California Court of Appeal rejected Lara's challenges to his sentence. The applicability of the Apprendi rule under California's sentencing scheme was still being fleshed out while Lara's appeal was pending. When the appellate court decided Lara's case, it had the benefit of the decision in Blakely v. Washington, 542 U.S. 296 (2004), but not the decisions in Cunningham v. California, 549 U.S. 270 (2007), and Oregon v. Ice, 129 S. Ct. 711 (2009). The California Court of Appeal concluded that the decision to impose some

terms as consecutive rather than concurrent was not prohibited by the Apprendi rule, and that the upper term sentences were, at most, harmless error. Cal. Ct. App. Opinion, at 26-33.

2. Analysis

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury. U.S. Const. amend. VI. This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment's Due Process Clause. Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968). Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 488-90 (2000). The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings. Blakely v. Washington, 542 U.S. 296, 303-04 (2004). In Cunningham v. California, 549 U.S. 270 (2007), the Court held that California's determinate sentencing law ("DSL") – which used a sentencing triad of lower/middle/upper terms – violated the Sixth Amendment because it allowed the sentencing court to impose an upper term sentence based on aggravating facts that it found to exist by a preponderance of the evidence. See id. at 288-89. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that California's DSL violated the rule set out in Apprendi. Id. at 288-89, 293.

An Apprendi error is subject to harmless error analysis. See Washington v. Recuenco, 548 U.S. 212 (2006); Butler v. Curry, 528 F.3d 624, 648 (9th Cir. 2008). Butler instructs that the harmless error inquiry for an Apprendi violation is "whether 'the error had a substantial and injurious effect on [the petitioner's] sentence." Butler, 528 F.3d at 648 (citing Brecht v.

Abrahamson, 507 U.S. 619 (1993)).  Relief must be granted if the court is in "'grave doubt'" as to whether a jury would have found the aggravating factors beyond a reasonable doubt." Id. (quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995)).  In doing the harmless error review, this court may consider evidence presented at sentencing, but not admissions made there.  Id.  Significantly, this court need not consider all the reasons and weigh them or review the state court's weighing of them because, under California law, only a single aggravating factor needs to be found to authorize the upper term.  See Butler, 528 F.3d at 642-43.  If a single aggravating factor is properly found, the trial court legally may impose the upper term sentence.  "That the judge might not have done so in the absence of an additional factor does not implicate the Sixth Amendment, as that consideration only concerns the imposition of a sentence within an authorized statutory range."  Id. at 649.

        a.     Upper Term Sentences

The state court of appeal explained why the upper term sentences were harmless error, if they were erroneous:

> In imposing the upper term on count 1, the [trial] court stated that it was ordering the upper term "because of the manner in which the defendant carried out this act of sodomy by having the young victim drink shots of tequila to the point where the victim became unconscious, and that was done with planning and sophistication on behalf of the predator-defendant to then commit the sexual act, and when the victim became unconscious and filmed the same." The court did not state why it imposed the upper term on counts 14, 22, 23, and 24 but ordered that those sentences be served concurrently.
>
> The probation report lists a number of aggravating factors, but only lists those factors generally and does not break it down by count. The factors listed include: (1) the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)); (2) the manner in which the crime was carried out indicates planning, sophistication or professionalism (Cal. Rules of Court, rule 4.421(a)(8)); (3) the defendant took advantage of a position of trust or confidence to commit the offense (Cal. Rules of Court, rule 4.421(a)(11)); (4) the defendant has engaged in violent conduct, which indicates a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)); and (5) the defendant was on probation or parole when the crime was committed (Cal. Rules of Court, rule 4.421(b)(4)). There were no factors in mitigation.
>
> Assuming the court's decision to impose the upper term violates Blakely, the record reflects a proper factor that could have been used to aggravate the terms on counts 14, 22, 23, and 24 without a further jury determination. California Rules of Court, rule 4.421(a)(7) provides that the fact the "defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed" is a circumstance in aggravation. Defendant could have been sentenced to four additional consecutive terms on these counts. That the court exercised its discretion not to impose consecutive sentences on these counts provides a circumstance to impose the upper term sentences for those counts that does not require any additional jury findings. Since the court found no mitigating

> factors, we believe the decision not to impose consecutive sentences on counts 14, 22, 23, and 24 provides a single aggravating factor which is sufficient to justify the imposition of an upper term based on the existing jury verdicts. (People v. Cruz (1995) 38 Cal.App.4th 427, 433; People v. Castellano (1983) 140 Cal.App.3d 608, 615.) Accordingly, the court's imposition of the upper term on counts 14, 22, 23, and 24 does not violate Blakely.
>
> As for the choice of the upper term on count 1, even if it were error to apply the upper term on this count, we see no possibility whatsoever that the jury, given the opportunity, would have failed to find that the manner in which the crime was carried out indicated planning, sophistication or professionalism, especially in light of the fact that defendant gave the victim (Daniel) excessive amounts of alcohol and filmed the sexual conduct. Thus, we conclude that any error in imposing the upper term on count 1 was harmless beyond a reasonable doubt. ( Chapman v. California, supra, 386 U.S. 18.)

Cal. Ct. App. Opinion, at 32-33.

Like the state court of appeal, this court concludes that the upper term sentences were harmless errors because there was an undisputed aggravating circumstance that permitted the upper term sentences. One of the aggravating circumstances that permits an upper term sentence in California is that "[t]he defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed." Cal. R. Ct. 4.421(a)(7). This aggravating circumstance that permitted the upper term sentences was present in Lara's case. His sentence includes several concurrent sentences for other crimes for which consecutive sentences could have been imposed. See Resp. Ex. A, CT 464-469 (abstract of judgment). The existence of the single aggravating circumstance in California Rule of Court 4.421(a) made Lara eligible for the upper term sentences he received on counts 1, 14, 22, 23, and 24. Since that aggravating circumstance existed for all the challenged counts, see Butler, 528 F.3d at 642-43, this court need not consider the trial court's other reasons for imposing the upper term sentences, or the state court of appeal's separate analysis of the harmless error on count 1.

    b.  Consecutive Instead Of Concurrent Terms

Lara's contention that the imposition of consecutive sentences violated the Apprendi rule is foreclosed by the recent decision in Oregon v. Ice, 129 S. Ct. 711 (2009), in which the Court held that the Sixth Amendment does not require juries to make findings of fact regarding the imposition of consecutive rather than concurrent sentences, and that states may allow judges to make those findings of fact. Under Ice, a trial judge may impose consecutive

sentences based on findings made by the judge without running afoul of the <u>Apprendi</u> line of cases. That is just what was done here. The sentences did not violate Lara's rights under <u>Apprendi</u>.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: November 12, 2010

Marilyn Hall Patel
United States District Judge